IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KATHLEEN PENDERGRAFT**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:10-CV-2047-L** |
| | § | |
| **FUJITSU NETWORK** | § | |
| **COMMUNICATIONS, INC.**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed April 14, 2011. After carefully reviewing the motion, briefs, appendices, response, reply, record, and applicable law, the court **grants** Defendant's Motion for Summary Judgment and **denies** Plaintiff's request for oral argument.*

## I. Factual and Procedural Background

Plaintiff Kathleen Pendergraft ("Pendergraft") filed her Original Complaint ("Complaint") in this court on October 11, 2010, against Defendant Fujitsu Network Communications, Inc. ("Fujitsu"). Pendergraft brings a cause of action against Fujitsu for willful violation of the Fair Labor Standards Act ("FLSA"), and jurisdiction over this action is proper under 28 U.S.C. § 1331 because Pendergraft's claim presents a federal question.

Pendergraft is a former employee of Fujitsu, where she worked as a Corporate Account Administrator from March 17, 2008, until March 19, 2010. When she accepted her job on March

---

*Oral argument does not assist the court in resolving the summary judgment motion because the issues raised in the motion involve a straightforward application of existing precedent to the facts, and the positions of the parties have been adequately stated in their respective briefs.

**Memorandum Opinion and Order – Page 1**

4, 2008, she acknowledged that her employment position was classified as "exempt" under the FLSA. Def.'s App. 8-9 [10:3-11:13], 54-55. She was paid a weekly salary of $865.39, received employee benefits including insurance and a 401k savings plan, and her salary was never decreased at any point in time during her employment. *Id.* at 13-14 [21:13-22:14], 54-55, 10 [14:23-24]. She never received extra compensation for any hours worked in excess of forty hours per week. *See id.* at 8-9 [10:3-11:13], 54-55.

Pendergraft contends that her employment position was improperly characterized as "exempt" under the FLSA because her duties were not "administrative." Specifically, she alleges that all of her actions were supervised by Fujitsu and performed at Fujitsu's instruction. Pl.'s Compl. 2 ¶ 5. To this end, she seeks recovery of all overtime compensation for hours that she worked in excess of forty hours each week at a rate of one and one-half times her normal hourly rate, as required under the FLSA for nonexempt employees. She also seeks attorney's fees and liquidated damages because she contends that Fujitsu's conduct constituted a willful violation of the FLSA.

Fujitsu now moves for summary judgment because it asserts that Pendergraft meets all of the criteria set forth under § 213(a)(1) of the FLSA to establish her as an "exempt" employee pursuant to the FLSA's administrative exemption, thus defeating Pendergraft's claim. In the alternative, if the court determines that Pendergraft is not an "exempt" employee under the FLSA, Fujitsu moves for partial summary judgment to the extent that the applicable overtime compensation rate should be calculated pursuant to the fluctuating work week method, resulting in a one-half overtime wage.

## II. Legal Standard – Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty

on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.   Analysis

The critical threshold issue that the court must decide is whether Pendergraft was an "exempt" employee under the FLSA. Fujitsu asserts that Pendergraft was exempt from the FLSA as an administrative employee under 29 C.F.R. § 541.200, thus defeating her claim for overtime compensation as a nonexempt employee. Under the FLSA, to qualify as an exempt administrative employee, the employee must: (1) be compensated on a salary or fee basis at a rate of not less than $455 per week; (2) have a primary duty of performing office or nonmanual work directly related to the management or general business operations of the employer; and (3) have a primary duty that includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a).

With respect to the first requirement, it is undisputed that Pendergraft received a salary greater than $455 per week. With respect to the second and third requirements, however, Pendergraft argues that it is debatable whether her work "directly related to the management or

general business operations" of Fujitsu, and she contends that her work never allowed her to exercise "discretion or independent judgment." Pl.'s Resp. Br. 4-5. In support of her assertions, Pendergraft draws the court's attention to excerpts from her deposition and copies of the written Work Instructions produced by Fujitsu during discovery. She states that she was required to follow a list of step-by-step instructions for every task and always had to receive management's approval before doing anything work-related.

In her deposition testimony, Pendergraft admitted that the type of work she performed at Fujitsu was nonmanual labor and consisted entirely of office work. Pl.'s Ap. 99 [50:18-21]. The evidentiary record also makes clear that Pendergraft's job duties were heavily customer-oriented. For example, Pendergraft served "primary point of contact for the customer" and processed and proofed all equipment sales orders and change requests orders for customers in the assigned territory. Def.'s App. 5 [6:1-7], 34 [91:15-16], 56. She resolved invoice disputes and issued customers' credit and debit memoranda, which ranged in multiple thousands of dollars. *Id.* at 37-38 [94:1-95:16], 56. She also was responsible for verifying and signing documentation sent to customers, including invoices and acknowledgments. *Id.* In addition, she addressed and resolved customer concerns, including customer requests regarding scheduled shipment dates and information. *Id.* at 34 [91:22-25], 56, 57. Further, on the face of her Complaint, Pendergraft states that she "provided part pricing and availability to customers, entered customers' orders, provided shipping details . . . processed change orders, addressed customer concerns relating to orders, and booked return orders." Pl.'s Compl. 2 ¶ 5. The court determines that such customer-oriented duties were, without question, directly related to the general business operations of Pendergraft's employer, Fujitsu.

**Memorandum Opinion and Order – Page 5**

Pendergraft nevertheless contends that her job duties prevented her from exercising "discretion or independent judgment" because everything she did required management approval. Specifically, she argues that she did not perform any "administrative" work and that her job duties put her in the production process, rather than an administrative role. In support of her argument, she relies on a 1988 district court opinion that considered the role of television producers. *See Dalheim v. KDFW-TV*, 706 F. Supp. 493, 507 (N.D. Tex. 1988) (Fitzwater, J.), *aff'd*, *Dalheim v. KDFW-TV*, 918 F.2d 1220 (5th Cir. 1990). In concluding that television producers were not "exempt" under the FLSA because they were involved in the production process of television programming, the *Dalheim* court reasoned that "[p]roducers merely utilize their knowledge in following . . . prescribed procedures or in determining what procedures to follow." *Id.* at 508. Pendergraft contends that her job duties were even more basic than that of television producers and that she should likewise be classified as nonexempt because her discretion and independent judgment were limited to determining which procedures or work instructions to follow and obtaining management approval prior to taking any action. The court is unpersuaded by Pendergraft's contentions for several reasons.

As an initial matter, the court notes that the evidentiary record lacks any indication that Pendergraft was ever involved in Fujitsu's production process. The *Dalheim* court was tasked with determining whether a television producer was involved in the *production* of television programming. It is apparent from the exhibits, deposition testimony, and affidavits that Pendergraft's role at Fujitsu was focused on customer service; she acted as a conduit between Fujitsu and its customers, and her duties had nothing to do with Fujitsu's production activities. For this reason, Pendergraft's attempt to analogize her job to a television producer is misplaced. Her duties

**Memorandum Opinion and Order – Page 6**

as a Corporate Account Administrator necessarily involved tasks that were wholly unrelated to Fujitsu's production, and her television producer analogy is therefore not on point. In addition, the court notes that *Dalheim* was decided sixteen years before the Secretary of Labor updated the regulations applicable to Pendergraft's FLSA claim, which casts further doubt on the vitality of *Dalheim* as applied to this case.

Moreover, the court is unpersuaded that Pendergraft was unable to exercise any discretion or independent judgment merely because she routinely followed Fujitsu's written work instructions and procedures, or because management approval was required before she could take action. *See Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006) ("[T]he requirement that [an employee] must consult with manuals or guidelines does not preclude [her] exercise of discretion and independent judgment."). Although Pendergraft may have been required, and perhaps even expected, to conduct her work-related duties pursuant to Fujitsu's written policies and procedures, her ability to interact, and her methodology of interacting, with Fujitsu's customers was not limited to that of an automaton. The deposition testimony of Fujitsu corporate representative Matthew Morphis reveals that Fujitsu's written work instructions are used as guidelines to help train Corporate Account Administrators as they develop and learn the system and process "in hopes that they can maybe even deviate from those and learn how to develop or better develop or improve the process itself." Def.'s App. 77 [62:10-23].

The court does not believe that an employment position requiring frequent interaction with customers, as Pendergraft's required, can rightly be considered void of all discretion and independent judgment. Interacting with customers is a malleable process that requires attentiveness, reactiveness, and discerning – all of which encompass at least some discretion or independent

judgment. Moreover, in the court's view of the various factors set forth by the Department of Labor as applied to the job duties that Pendergraft testified she performed, there is little doubt that she was properly classified as an "exempt" employee under the administrative exemption to the FLSA. *See* 29 C.F.R. 541.202(b). Specifically, these factors include whether the employee: carried major assignments in conducting business operations; performed work that affects business operations to a substantial degree; had authority to commit the employer in matters that have significant financial impact; provided consultation or expert advice to management; investigated and resolved matters of significance on behalf of management; and represented the company in handling complaints. *Id.* In its review of the evidentiary record, the court determines that Pendergraft's employment as a Corporate Account Administrator indisputably included all of these factors.

The court therefore concludes from the evidentiary record that Pendergraft meets all three requirements to satisfy the administrative exemption under the FLSA. In other words, the summary judgment evidence demonstrates that Pendergraft was compensated on a salary or fee basis at a rate of not less than $455 per week; had a primary duty of performing office or nonmanual work directly related to the management or general business operations of the employer; and had a primary duty that included the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § 541.200(a). There is no genuine dispute of material fact, and Fujitsu is entitled to judgment as a matter of law on Pendergraft's FLSA claim.

Because the court concludes that Pendergraft was an "exempt" employee under the FLSA, it does not address Fujitsu's alternative motion for partial summary judgment relating to the fluctuating work week method for Pendergraft's overtime wages.

## IV.     Conclusion

For the reasons stated herein, the court determines that no genuine dispute of material fact exists with respect to Pendergraft's FLSA claim against Fujitsu.  The court accordingly **grants** Defendant's Motion for Summary Judgment, and Pendergraft's FLSA claim is **dismissed with prejudice**.  The court will enter a judgment by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 26th day of August, 2011.

　　　　　　　　　　　　　　　　　　　　　Sam A. Lindsay
　　　　　　　　　　　　　　　　　　　　　United States District Judge